IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION,  )<br>SUCCESSOR TO RBC BANK (USA),           )<br>SUCCESSOR TO RBC CENTURA BANK, )<br>SUCCESSOR TO REGIONS BANK          )<br>DOING BUSINESS AS AMSOUTH BANK )<br>     Plaintiff,                                                )<br>                                                                      )<br>vs.                                                                  )<br>                                                                      )<br>CLASSIC CRAB, INC. and                              )<br>DARYL B. BRYANT A/K/A                          )<br>DARYL BOYD BRYANT                               )<br>     Defendants.                                            )   | CIVIL ACTION 15-00459-KD-C |

## ORDER

This matter is before the Court on Plaintiff's Motion for Default Judgment. (Doc. 25). Upon consideration, the motion is **GRANTED in part** and **DENIED in part**. However, Plaintiff shall supplement its motion on or before **April 28, 2016** as directed herein.

**I.     Background**

On November 4, 2015, Plaintiff PNC Bank, National Association, successor to RBC Bank (USA), successor to RBC Centura Bank successor to Regions Bank doing business as AmSouth Bank ("PNC") filed its amended complaint against Defendants Classic Crab Inc. ("Classic Crab") and Daryl B. Bryant ("Bryant"). The Complaint alleged that Classic Crab had breached its promissory note with the bank (Count I), and that Bryant had breached a guaranty agreement with the bank (Count II). Plaintiff moves for default judgment only on its claim for breach of promissory note (Count I), brought against Classic Crab. On March 14, 2016, the Clerk entered default against Defendant Classic Crab. (Doc. 24).  Plaintiff seeks default judgment consisting of the following: "principal in the amount of $199,755.83, accrued interest through March 16, 2016 in the amount of $17,215.23, (plus per diem interest at the rate of

$45.15 thereafter), late charges in the amount of $1,390.08, and attorney's fees of $16,547.25, and future accruals of interest and court costs." (Doc. 25 at 3-4).

**II.     Default Judgment**

The *Federal Rules of Civil Procedure* establish a two-part process for obtaining a default judgment. Fed.R.Civ.P. 55. If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter default judgment. Fed.R.Civ.P. 55(b)(1). In all other circumstances, such as here, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2).

The Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Tyco Fire & Sec., LLC v. Alcocer,* 218 Fed. Appx. 860, 863 (11th Cir.2007) (*per curiam* ) (citations and internal quotations omitted). Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* (emphasis omitted). Therefore, PNC must establish a "prima facie liability case" against Classic Crab. *Pitts ex rel. Pitts v. Seneca Sports, Inc.,* 321 F.Supp.2d 1353, 1357 (S.D.Ga.2004) (citations omitted).

Further, when assessing damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot,* 317 F.3d 1264,

1266 (11th Cir.2003). Overall, "there is a strong policy of determining cases on their merits" and therefore defaults are viewed "with disfavor." *In re Worldwide Web Sys., Inc.,* 328 F.3d 1291, 1295 (11th Cir.2003). "Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada,* 674 F.2d 1365, 1369 (11th Cir.1982).

### III.   Analysis

#### A.   Governing Law

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In Alabama, the courts follow the traditional conflict-of-law principles of *lex loci contractus*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). Accordingly, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's law to govern their agreement, *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991).  Here, the Note provides that it shall be governed by the laws of Alabama. (Doc. 25-1 at 15). Thus, the Court will apply Alabama law.

#### B.   Breach of Promissory Note (Count I)

 "A promissory note is a form of contract; therefore, it must be construed under general contract principles." *Merchants Bank v. Head*, 161 So.3d 1151, 1154 (Ala. 2014) (citing *Bockman v. WCH, L.L.C.*, 943 So.2d 789, 795 (Ala. 2006) (quoting *Dawkins v. Walker*, 794 So.2d 333, 339 (Ala. 2001), quoting in turn *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d 33,

35–36 (Ala.1998)). "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala.2009) (internal quotes omitted).

The uncontroverted evidence shows that a contract existed between PNC and Classic Crab, i.e., the Note; that PNC performed under the terms of the Note by loaning funds to Classic Crab; that Classic Crab failed to pay the Note according to its terms which resulted in its default; and that PNC was damaged by Classic Crab's failure to pay. The Affidavit of the PNC Asset Manager Casey Young is sufficient evidence of Classic's failure to make the required payments.[1] Young stated "Classic Crab is in default under the Note for reasons including but not limited to Classic Crab having failed to pay sums due when called for under the Note." (Doc. 25-1 at 4; Aff. Young at 3).

As to the amount due, Young stated:

> As of March 16, 2016, pursuant to the Note, Classic Crab owes the Bank, exclusive of attorney's fees, future interest, expenses and costs, the total sum of $218,361.14, consisting of principal in the amount of $199,744.83, accrued interest in the amount of $17,215.23, and late charges of $1,390.08. Per diem interest shall accrue at the rate of $45.15 on the unpaid principal until paid in full…

(Doc. 25-1 at 4-5; Aff. Young at 3-4). Based on the foregoing, the Court finds that default judgment as to Count I (breach of promissory note) is due to be **GRANTED** on behalf of PNC.

C. **Attorneys' Fees**

PNC moves for recovery of **$16,547.25** in attorneys' fees for 97.3 hours of work. The amended complaint contained two counts. Count I was brought against defendant Classic Crab

---

[1] *See Wells Fargo Bank, N.A. v. Vergos*, 2012 WL 206169, *2 (S.D. Ala. Jan. 24, 2012) ("Alabama law provides that the proffer of a copy of the note and affidavit testimony as to the amounts due under the note, as well as the defendant's failure to make the required payments, is sufficient to establish a plaintiff's case to recover a note.") (citing *Griffin v. American Bank*, 628 So.2d 540, 543 (Ala. 1993) (affidavit submitted by bank president)).

and Count II was brought against defendant Daryl Bryant. Entry of default judgment was sought only as to Count I against Classic Crab.

The Promissory Note provides that Classic Crab shall pay attorneys' fees and expenses. (Doc. 25-1 at 15). In his Affidavit, Attorney T. Julian Motes (counsel for PNC) asserts that the number of hours expended and hourly rates charged were reasonable. (Doc. 25-2 at 5-6; Aff. Motes at 4-5 ¶ 9). "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract...." *Jones v. Regions Bank,* 25 So.3d 427, 441 (Ala. 2009) (citations omitted). *See also Battle v. City of Birmingham,* 656 So.2d 344, 347 (Ala. 1995) (same). The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach." *Army Aviation Center Federal Credit Union v. Poston,* 460 So.2d 139, 141 (Ala.1984). *See also Ierna v. Arthur Murray Int'l., Inc.,* 833 F.2d 1472, 1476 (11th Cir.1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case [ ]"). Under Alabama law, such attorney's fees are recoverable; however, recovery is subject to Alabama's imposition of a reasonableness constraint on all fee shifting contracts, as a matter of public policy. *See, e.g., Willow Lake Residential Ass'n., Inc. v. Juliano,* 80 So.3d 226, 241 (Ala.Civ.App.2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation[ ]"); *PNCEF, LLC v. Hendricks Bldg. Supply LLC,* 740 F.Supp.2d 1287, 1294 (S.D.Ala.2010) (rejecting claim for attorney's fees in amount of 15% of fund to be collected, where plaintiff made no showing of its actual attorney's fee incurred in enforcing contract). Thus, PNC is entitled to recover only its reasonable attorneys' fees and costs incurred in collecting on Classic Crab's debt.

The calculation of reasonable attorney's fees is within the sound discretion of the court. *Dowdell v. City of Apopka, Fla.,* 698 F.2d 1181, 1187 (11th Cir.1983); *Kiker v. Probate Court of*

*Mobile Cty.,* 67 So.3d 865, 867 (Ala. 2010). In assessing the reasonableness of attorney's fee requests, courts generally apply the "lodestar" method to obtain an objective estimate of the value of an attorney's services. *Norman v. Housing Auth. of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988); *Dillard v. City of Greensboro,* 213 F.3d 1347, 1353 (11th Cir.2000) (explaining that the lodestar "is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area"). The value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay, defined as "the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895–896 n. 11 (1984). The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *American Civil Liberties Union of Ga. v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999). The court may utilize its own "knowledge and expertise" to come to an independent judgment regarding the reasonableness of requested attorney's fees. *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994).

When seeking attorney's fees, the prevailing party must not request fees for hours that are "excessive, redundant, or otherwise unnecessary;" or request fees for unsuccessful claims. *Hensley,* 461 U.S. at 434-435. When a request for attorney's fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir. 2008). Likewise, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. *See, e.g.,*

*Norman,* 836 F.2d at 1299. Notably,"[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment with or without the aid of witnesses." *Id.* at 1303 (citations omitted).

Further, the lodestar figure established by the Court may be adjusted by consideration of various factors including:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

*Van Schaack v. AmSouth Bank, N.A.,* 530 So.2d 740, 749 (Ala. 1988). *See also e.g. Pharmacia Corp. v. McGowan,* 915 So.2d 549, 552–554 (Ala. 2004); *Lolley v. Citizens Bank,* 494 So.2d 19 (Ala. 1986). These criteria are for purposes of evaluating whether an attorney fee is reasonable but they are not an exhaustive list of specific criteria that must all be met. *Beal Bank, SSB v. Schilleci,* 896 So.2d 395, 403 (Ala. 2004).

### 1. Reasonable Rate

A plaintiff has the burden of supplying the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed. *Barnes,* 168 F.3d at 427 (citing *Norman,* 836 F.2d at 1303). The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. In this case, the relevant legal community is Mobile, Alabama. *See Barnes,* 168

F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." (citation omitted)).

The rates requested include rates for time counsel ($175/hour for counsel with 9–45 years of experience) as well as paralegals (ranging from $85.50 to $90/hour for paralegals with 20-40 years of experience) expended, for a total of **97.3** hours litigating this case. (Doc. 25-2 at 4).

    a.    **Attorneys' Hourly Rate**

Plaintiff seeks $175/hour for 4.3 hours of work by C. Lee Reeves (45 years of experience); $175/hour for 59.35 hours of work by George M. Neal, Jr. (38 years of experience); $175/hour for 27.2 hours of work by T. Julian Motes (33 years of experience); $175/hour for 0.3 hours of work by Rodney Nolen (41 years of experience); and $175/hour for 0.5 hours of work by Sam Friedman (9 years of experience). The requested $175/hour rate for attorneys Reeves, Neal, Motes, Nolen, and Friedman (all having at least 9 years of experience) does not exceed rates which have been found reasonable in this Court. *See, e.g., Wells Fargo Bank, N.A. v. Friday Const. Co., Inc.,* 2012 WL 5381558, *5 (S.D.Ala. Oct. 31, 2012). As such, upon consideration, the Court finds the requested attorney hourly rates are due to be granted, as they are reasonable and below rates previously awarded by this Court for attorneys with these levels of experience. As such, the Court awards attorneys the rate of **$175/hour.**

    b.    **Paralegals' Hourly Rate**

PNC seeks recovery of fees for the work of four paralegals: Conger, Bailey, Fulbright, and Albert whose years experience levels range from 20-40 years. In this market, this Court regularly approves rates of $75/hour for paralegals. *See, e.g., SE Property Holdings, LLC v. Green,* 2013 WL 790902, *6 (S.D.Ala. Mar.1, 2013); *Zuffa, LLC v. Al–Shaikh,* 2011 WL 1539878, *9 (S.D.Ala. Apr.21, 2011); *Williamson,* 2011 WL 382799, *5; *Adams v. Austal,*

*U.S.A., L.L.C.,* 2009 WL 3261955, *2 (S.D.Ala. Oct.7, 2009); *Lanier Construction Inc. v. Carbone Properties of Mobile, LLC,* CV 06–0070–CB–B (S.D.Ala. Feb. 12, 2008). Though PNC has provided the Court with the paralegals' years of experience, "[p]laintiff has not shown that the paralegals working on this case had 'unusually advanced qualification or expertise,' justifying an hourly rate exceeding $75/hour. As such, the Court awards the hourly rate of **$75/hour** for work performed by the firms' paralegals.

## 2. Reasonable Hours Expended

In his affidavit, Motes states: "The amount for our legal services for time relating only to the claims against the individual Defendant, Daryl Bryant, has not been included in the detailed billing hours and notes." However, the Court's review of the submitted billing records reveals entries that appear to pertain to the individual defendant. (Doc. 25-2 at 10-19). For example, billing entries from August 2015 bill for "[d]iscussion with Daryl Bryant in response to Daryl Bryant's call inquiring status or answer on boat payoff issues and to advise again for the third time that I have to have the financials in order to get an answer for him" and "[t]elephone conversation with Daryl Bryant, correspondence to Casey Young transmitting [redacted] from Bryant during telephone call regarding efforts to resolve boat loan issues." (Doc. 25-2 at 11). Similarly, on October 12, 2015, George M. Neal, Jr. billed 0.20 hours at a rate of $175/hour to "[r]espond to inquiry of special process server regarding serving Complaint on Daryl Bryant, individually." (Doc. 25-2 at 12).[2]

Based on its review of the submitted billing records it appears to the Court that adjustments may not have been made to remove all billings pertaining to the individual

---

[2] The Court notes that the billing record organization is difficult to read and this event may have been on October 7, 2015 for 0.15 hours. Further, these are only representative examples of entries that the Court noted as being unrelated to defendant Classic Crab. There are a number of billing entries that require the Plaintiff's evaluation and determination regarding hours pertaining only to Classic Crab.

defendant in this matter. Accordingly, Plaintiff is **ORDERED** to supplement its motion by making any required adjustments to its request for attorneys' fees. This supplement shall be filed on or before **April 28, 2016**.

### D. Costs

PNC seeks to recover an additional unknown sum for "future accruals of … court costs." (Doc. 25 at 4). However, PNC has provided no case law supporting the propriety and/or reasonableness of a party's ability to recover costs not yet incurred, and thus the request is **DENIED**.

### IV. Conclusion

Accordingly, it is **ORDERED** that PNC's motion for default judgment against Classic Crab. (Doc. 25) is **GRANTED in part** and **DENIED in part as follows**: 1) **GRANTED** as to its claim for breach of promissory note, but with leave to supplement as to its request for attorney's fees; and 2) **DENIED** as to its request for future accruals of courts costs. Plaintiff shall supplement its motion as directed above on or before **April 28, 2016**. The Court will then assess the full amount of damages due to PNC due to Classic Crab's breach of the promissory note, and issue a separate order and any appropriate judgment as to the same.

**DONE** and **ORDERED** this **18**th day of **April 2016.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**