IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PNC BANK, NATIONAL ASSOCIATION,  )
SUCCESSOR TO RBC BANK (USA),     )
SUCCESSOR TO RBC CENTURA BANK,   )
SUCCESSOR TO REGIONS BANK        )
DOING BUSINESS AS AMSOUTH BANK   )
    Plaintiff,                   )
                                 )
vs.                              )   CIVIL ACTION 15-00459-KD-C
                                 )
CLASSIC CRAB, INC. and           )
DARYL B. BRYANT A/K/A            )
DARYL BOYD BRYANT                )
    Defendants.                  )

## ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 31) and supporting documentation (Docs. 32-34). For the reasons discussed herein, Plaintiff's motion for summary judgment against Defendant Daryl B. Bryant a/k/a/ Daryl Boyd Bryant is **GRANTED**.[1]

**I.   Findings of Fact**[2]

On November 4, 2015, Plaintiff PNC Bank, National Association, successor to RBC Bank (USA), successor to RBC Centura Bank successor to Regions Bank doing business as AmSouth Bank ("PNC") filed its amended complaint against Defendants Classic Crab Inc. ("Classic Crab") and Daryl B. Bryant ("Bryant"). The Complaint alleged that Classic Crab had breached its promissory note with the bank (Count I), and that Bryant had breached its guaranty

---

[1] Defendant Daryl Bryant did not respond to the motion.
[2] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

agreement with the bank (Count II). Plaintiff moved for default judgment only on its claim for breach of promissory note (Count I), brought against Classic Crab.

Classic Crab was the borrowing party to a promissory note on which Bryant signed two guaranty agreements. Bryant personally guaranteed the notes entered into by PNC and Classic Crab. (Doc. 34-1 at 19-27). The first guaranty was dated October 21, 2009 and the second guaranty was dated June 25, 2012 (*Id*.). After Classic Crab defaulted, PNC (through counsel) sent a notice of acceleration, demand, and reservation of rights to both Defendants. (Doc. 34-1 at 29-32). Neither defendant satisfied the debt.

On March 14, 2016, the Clerk entered default against Defendant Classic Crab. (Doc. 24). As discussed in the Court's previous order, Classic Crab failed to pay the sums owed under the Notes at issue in Count I (breach of contract), which resulted in Classic Crab's default on the loan. Default judgment in the amount of $230,263.24 has been entered against Classic Crab. (Docs. 26, 28, and 29).[3]

On June 21, 2016, PNC moved for summary judgment on its claim for breach of guaranty (Count II) brought against Bryant. (Docs. 31-34). The guaranty agreements at issue, signed by Bryant, guaranteed two promissory notes executed on behalf of Classic Crab. (Doc. 34-1 at 12-17).

**II.   Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Rule 56(c) provides as follows:

---

[3] This amount was comprised of damages claimed by the Plaintiff on Count I (breach of promissory note) consisting of principal in the amount of $199,755.83, accrued interest in the amount of $17,215.23, accrued to March 16, 2016, late charges in the amount of $1,390.08, and attorney's fees in the amount of $11,902.10.

2

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

Defendant, as the party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In assessing whether the nonmovant has met its burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 999 (11th Cir. 1992).

Here, the Defendant failed to respond to PNC's motion for summary judgment. The "mere failure of the non-moving party to create a factual dispute does not automatically authorize the entry of summary judgment for the moving party Rule 56 requires the moving party to demonstrate the absence of a genuine issue of fact." *Dixie Stevedores, Inc. v Marinic Maritime, Ltd.*, 778 F.2d 670, 673 (11th Cir. 1985). The Eleventh Circuit has held "[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion," and noted the provision in Fed. R. Civ. P. 56(e) that when "'the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.'" *United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004)(emphasis in original); *see also Trustees of the Central Pension Fund of the Int'l Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc.*, 374 F.3d 1035, 1040 (11th Cir. 2004) (vacating and remanding the district court's grant of summary judgment, in part, "[b]ecause summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment").

**III.   Analysis**

  **A.   Governing Law**

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In Alabama, the courts follow the traditional conflict-of-law principles of *lex loci*

*contractus*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). Accordingly, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's law to govern their agreement, *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991). Here, the Commercial Guaranty Agreements provide that they shall be governed by the laws of Alabama. (Doc. 34-1 at 21 and 26). Thus, the Court will apply Alabama law.

  **B.**  **Breach of Guaranty**

Under Alabama law, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." *Delro Industries, Inc. v. Evans,* 514 So.2d 976, 979 (Ala.1987). The guaranties at issue here are continuing guaranties. "[T]o recover under a…continuing guaranty, an additional element, notice to the guarantor of the debtor's default, must be proved. *Delro Indus., Inc. v. Evans*, 514 So. 2d 976, 979 (Ala. 1987).[4] Here, PNC provided that notice via its letter to the Defendants. (Doc. 34-1 at 29-32).

PNC has sufficiently shown all elements of breach of guaranty, through uncontroverted proof of the existence of the Continuing Guaranty Agreements executed by Bryant, default on the underlying note by Classic Crab, Inc., and nonpayment of guaranteed sums by Bryant. (*See* Doc. 34-1, including Affidavit of PNC Asset Manager Casey Young; the Classic Crab promissory notes, and Bryant's guaranty agreements). Young's affidavit provides: "[Bryant] is in default under the [guaranties] for reasons including but not limited to [Bryant] having failed to

---

[4] The Notice requirement may be waived. *See e.g. RBC Bank v. CMI Electronics, Inc*., Slip Copy, 2010 WL 2719096, *2 (M.D. Ala. Jul. 8, 2010) (providing that "[i]n the case of a continuing guaranty, it is also necessary to prove that the guarantor received notice of the debtor's default, unless that right has been waived by the terms of the guaranty contract.").

5

pay sums due under the Note when called for under the [guaranties]…By virtue of Classic Crab's default under the Note, including but not limited to its failure to make payments as they came due under the Note, the Note was accelerated and demand was made by the Bank upon Classic Crab and [Bryant] for payment of all sums due for the accelerated balances under the Notes and the [guaranties]." (Doc. 34-1 at 4-5). [5] Bryant has not disputed the existence of any element of PNC's claim for breach of guaranty. Upon consideration, PNC's motion for summary judgment as to Count II (breach of guaranty) is **GRANTED**.

### C.  Damages

PNC claims it is owed a total of $238,771.94.[6] This amount is "comprised of the $230,263.24 total judgment amount awarded in the Court's Order and Judgment against Classic Crab (Doc. 28 and Doc. 29)," which is the amount of the guaranteed debt, as well as "additional pre-judgment interest which has accrued from March 16, 2016 until June 7, 2016 in the amount of $3,747.45 and additional attorney fees in the amount of $4,761.25." (Doc. 32 at 9). PNC also seeks additional *per diem* interest accruing at the *per diem* rate of $45.15 per day from June 8, 2016 until the date of judgment. (Docs. 32, 34-1 at 5).

### 1.  Additional Interest

From March 16, 2016 to June 7, 2016, 83 days passed. *Per diem* interest at $45.15/day times 83 equals $3,747.45. Thus, the Court finds the requested sum of $3,747.45 in additional interest to be appropriate. From June 8, 2016 to August 11, 2016 (the date of judgment), $2,889.60 in interest has accrued (*per diem* interest at $45.15/day times 64 days). Accordingly, an additional $2,889.60 in *per diem* interest through the date of judgment is awarded.

---

[5] *See e.g. Wells Fargo Bank, N.A. v. Vergos*, 2012 WL 206169, *2 (S.D. Ala. Jan. 24, 2012) ("Alabama law provides that the proffer of a copy of the note and affidavit testimony as to the amounts due under the note, as well as the defendant's failure to make the required payments, is sufficient to establish a plaintiff's case to recover a note.") (citing *Griffin v. American Bank*, 628 So.2d 540, 543 (Ala. 1993) (affidavit submitted by bank president)).
[6] PNC requests two cents more but the Court's calculations arrive at this sum. Any difference is *de minimis*.

**2.     Attorneys' Fees**

PNC moves for recovery of $4,761.25 in attorneys' fees for 27.35 hours of work. (Doc. 34-3). Both guaranty agreements provide that the Guarantor shall pay attorneys' fees and expenses. (Doc. 34-1 at 20-21 and 25-26).

In his Affidavit, Attorney T. Julian Motes (counsel for PNC) asserts that the number of hours expended and hourly rates charged were reasonable. (Doc. 34-3). "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract...." *Jones v. Regions Bank,* 25 So.3d 427, 441 (Ala. 2009) (citations omitted). *See also Battle v. City of Birmingham,* 656 So.2d 344, 347 (Ala. 1995) (same). The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach." *Army Aviation Center Federal Credit Union v. Poston,* 460 So.2d 139, 141 (Ala.1984). *See also Ierna v. Arthur Murray Int'l., Inc.,* 833 F.2d 1472, 1476 (11th Cir.1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case [ ]"). Under Alabama law, such attorney's fees are recoverable; however, recovery is subject to Alabama's imposition of a reasonableness constraint on all fee shifting contracts, as a matter of public policy. *See, e.g., Willow Lake Residential Ass'n., Inc. v. Juliano,* 80 So.3d 226, 241 (Ala.Civ.App.2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation[ ]"); *PNCEF, LLC v. Hendricks Bldg. Supply LLC,* 740 F.Supp.2d 1287, 1294 (S.D.Ala.2010) (rejecting claim for attorney's fees in amount of 15% of fund to be collected, where plaintiff made no showing of its actual attorney's fee incurred in enforcing contract). Thus, PNC is entitled to recover only its reasonable attorneys' fees and costs incurred in collecting on the debt.

The calculation of reasonable attorney's fees is within the sound discretion of the court. *Dowdell v. City of Apopka, Fla.,* 698 F.2d 1181, 1187 (11th Cir.1983); *Kiker v. Probate Court of Mobile Cty.,* 67 So.3d 865, 867 (Ala. 2010). In assessing the reasonableness of attorney's fee requests, courts generally apply the "lodestar" method to obtain an objective estimate of the value of an attorney's services. *Norman v. Housing Auth. of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988); *Dillard v. City of Greensboro,* 213 F.3d 1347, 1353 (11th Cir.2000) (explaining that the lodestar "is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area"). The value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay, defined as "the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895–896 n. 11 (1984). The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *American Civil Liberties Union of Ga. v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999). The court may utilize its own "knowledge and expertise" to come to an independent judgment regarding the reasonableness of requested attorney's fees. *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994).

When seeking attorney's fees, the prevailing party must not request fees for hours that are "excessive, redundant, or otherwise unnecessary;" or request fees for unsuccessful claims. *Hensley,* 461 U.S. at 434-435. When a request for attorney's fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir. 2008). Likewise, where

the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. *See, e.g., Norman,* 836 F.2d at 1299. Notably,"[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment with or without the aid of witnesses." *Id.* at 1303 (citations omitted).

Further, the lodestar figure established by the Court may be adjusted by consideration of various factors including:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

*Van Schaack v. AmSouth Bank, N.A.,* 530 So.2d 740, 749 (Ala. 1988). *See also e.g. Pharmacia Corp. v. McGowan,* 915 So.2d 549, 552–554 (Ala. 2004); *Lolley v. Citizens Bank,* 494 So.2d 19 (Ala. 1986). These criteria are for purposes of evaluating whether an attorney fee is reasonable but they are not an exhaustive list of specific criteria that must all be met. *Beal Bank, SSB v. Schilleci,* 896 So.2d 395, 403 (Ala. 2004).

A plaintiff has the burden of supplying the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed. *Barnes,* 168 F.3d at 427 (citing *Norman,* 836 F.2d at 1303). The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836

9

F.2d at 1299. In this case, the relevant legal community is Mobile, Alabama. *See Barnes,* 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." (citation omitted)).

PNC states that a total number of 27.35 hours were expended litigating this case as to Bryant. (Doc. 34-3). PNC requests $175/hour for counsel with 33 to 45 years of experience and$75/hour for paralegals with 20 to 21 years of experience. (*Id.*).

The requested $175/hour rate for attorneys does not exceed rates which have been found reasonable in this Court. *See, e.g., Wells Fargo Bank, N.A. v. Friday Const. Co., Inc.,* 2012 WL 5381558, *5 (S.D.Ala. Oct. 31, 2012). As such, upon consideration, the Court finds the requested attorney hourly rates are due to be granted, as they are reasonable and below rates previously awarded by this Court for attorneys with these levels of experience. As such, the Court awards attorneys the rate of $175/hour.

In this market, this Court regularly approves rates of $75/hour for paralegals. *See, e.g., SE Property Holdings, LLC v. Green,* 2013 WL 790902, *6 (S.D.Ala. Mar.1, 2013); *Zuffa, LLC v. Al–Shaikh,* 2011 WL 1539878, *9 (S.D.Ala. Apr.21, 2011); *Williamson,* 2011 WL 382799, *5; *Adams v. Austal, U.S.A., L.L.C.,* 2009 WL 3261955, *2 (S.D.Ala. Oct.7, 2009); *Lanier Construction Inc. v. Carbone Properties of Mobile, LLC,* CV 06–0070–CB–B (S.D.Ala. Feb. 12, 2008). The Court awards the hourly rate of $75/hour for work performed by the firm's paralegals.

The hours claimed pertain to the case against Bryant. Attorneys' fees were previously awarded to PNC for the hours expended pertaining to the case against Classic Crab. Upon review of the materials submitted, the Court finds that 27.35 hours is a reasonable amount of hours

expended under the circumstances of this case. Accordingly, attorneys' fees in the amount of $4,761.25 are awarded to PNC and will be incorporated into the Judgment.

### IV.     Conclusion

Upon consideration of the foregoing, PNC's motion for summary judgment on its claim for breach of guaranty is **GRANTED.** Judgment is entered against Defendant Daryl Bryant in the amount of $241,661.54, which is comprised of the guaranteed debt of $230,263.24, $6,637.05 in additionally accrued interest, and $4,761.25 in attorneys' fees. Pursuant to Fed. R. Civ. P. 58, Judgment will issue by separate document.

**DONE** and **ORDERED** this **11**[th] day of **August 2016.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**